# EXHIBIT A

Jared M. Katz, SBN 173388
Mullen & Henzell L.L.P.
112 East Victoria Street
Santa Barbara, CA 93101-2019
Telephone: (805) 966-1501
Facsimile: (805) 966-9204
Email: *jkatz@mullenlaw.com*

Attorneys for Defendant H. Ty Warner

# IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN ZIMMIE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>H. TY WARNER,<br><br>　　　　Defendant. | Case No. _____<br><br>**NOTICE OF REMOVAL BASED ON FEDERAL QUESTION AND DIVERSITY JURISDICTION**<br><br><br>Action Removed October 1, 2021<br><br>**JURY TRIAL DEMANDED** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant H. Ty Warner ("Warner"), by his undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, to the United States District Court for the Central District of California ("Notice of Removal"). For the reasons stated below, this Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Additionally, the Court has federal question jurisdiction over the Racketeer Influenced Corrupt Organizations Act ("RICO") claim

asserted in Count Seven under 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. As grounds for removal, Warner states as follows (while also providing supporting declarations which are attached as exhibits):

## I. BACKGROUND

1. Plaintiff Kathryn Zimmie ("Zimmie") became acquainted with Warner many years ago in Lakewood, Ohio, and over time developed both a business relationship with Warner's companies, Ty Inc. ("Ty") and Ty Warner Hotels & Resorts LLC ("TWHR"), and a personal relationship with Warner.

2. In October 2020, Zimmie ended her personal relationship with Warner.

3. On December 7, 2020, Zimmie, through her attorney, contacted Warner and advised him that she was seeking compensation from Warner pursuant to some unidentified "financial responsibility" she claimed to be owed.

4. On January 29, 2021, Zimmie's attorney wrote to counsel for Warner and advised him that Zimmie was seeking compensation in an eight-figure range in connection with an implied or oral agreement that Zimmie alleged was created as a result of the personal relationship that previously existed between Warner and Zimmie.

5. Warner disputes that any such implied or oral contract was formed between the parties. To the contrary, the only agreement involving the parties is a written consulting agreement between Zimmie's company, Cleveland Designs Consultants LLC, and Warner's companies, Ty Inc. and TWHR, entered into on January 16, 2018. Zimmie was paid a monthly consulting fee of $16,666.00 in connection with that agreement. The consulting agreement was terminated on March 22, 2021.

6. Because Warner asserts that there does not exist any agreement to provide financial compensation to Zimmie other than the consulting agreement described above and further asserts that no additional compensation is owed to Zimmie, on March 12, 2021, Warner filed a declaratory judgment action in the United States District Court for the Northern District of Illinois, Case No. 21 CV 1390, ("the Illinois Federal

Action") pursuant to both 28 U.S.C. § 1332(a)(1) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. In the Illinois Federal Action, Mr. Warner is seeking a declaration that (1) there is no implied or oral agreement between Warner and Zimmie pursuant to which Warner is obligated to pay Zimmie any sums for her ongoing support or for services provided to Warner; (2) any implied or oral agreement for palimony would be void under Illinois law; and (3) Warner therefore has no obligation under any implied or oral contract to pay Zimmie any of the compensation she claims to be owed.

8. In a forum-shopping effort to obtain perceived strategic advantages from filing a second suit in California, on September 1, 2021, Zimmie filed a complaint alleging seven causes of action, including a RICO claim pursuant to 28 U.S.C. § 1964, in the Superior Court of the State of California, County of Santa Barbara, captioned Zimmie v. Warner, Case No. 21-CV-03511 (the "State Court Action").[1]

9. In the State Court Action, Zimmie alleges several claims. In Counts One and Two, she alleges that, as a result of a personal relationship that existed between Warner and Zimmie, there exists an express or an implied oral contract pursuant to which Warner promised to financially care for Zimmie for her lifetime. Zimmie alleges that, as a result of this purported agreement, Warner owes Zimmie damages for her future care and support. In Count Three, Zimmie asserts a claim to quiet title, pursuant to which Zimmie alleges that she is entitled to a 50% interest in a property located in Santa Barbara that she claims Warner owns, which Zimmie alleges is worth more than $400 million. In Counts Four and Five, Zimmie asserts emotional distress claims. In Count Six, Zimmie alleges a claim for conversion of some paintings that Zimmie gave Warner. Finally, in Count Seven, Zimmie asserts a claim under the RICO Act.

---

[1] Attached as Exhibit A is a true and correct copy of the Complaint filed in the State Court Action. Attached as Exhibit B is a copy of the entire docket (except for the Complaint) from the State Court Action. Attached as Exhibits C and D are the Declarations of H. Ty Warner and Cathy Hwang, respectively.

10. Warner denies any liability whatsoever under any theory and in any amount. Solely for purposes of this Notice of Removal, Warner relies on certain of Zimmie's allegations, as set forth in the State Court Action, and on the attached declarations, to satisfy the requirements of removal under 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

## II. REMOVAL IS TIMELY UNDER 28 U.S.C. § 1446(b)

11. Pursuant to 28 U.S.C. § 1446(b)(1), a notice of removal shall be filed within 30 days after the defendant is served. 28 U.S.C. § 1446(b)(1).

12. The 30-day time period for removal begins to run after the defendant has been formally served with the summons and received the complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise'"). Where a party acknowledges receipt and waives formal service, the clock starts when the defendant returns an Acknowledgment of Receipt pursuant to California Code of Civil Procedure section 415.30. *Harper v. Little Caesar Enterprises, Inc.*, 2018 WL 5984841, at *2 (C.D. Cal. Nov. 14, 2018) (holding the time period for removal began to run after the defendant executed the acknowledgement of receipt; *Snow v. AT & T Corp.*, 2005 WL 1798399, at *2 (N.D. Cal. July 27, 2005) (same).

13. On September 2, 2021, Zimmie transmitted to Warner a copy of the summons and complaint for the State Action. On September 8, 2021, Warner returned an executed Acknowledgment of Receipt for the State Action. Consequently, Warner had until October 8, 2021 to file a notice of removal. Warner timely filed this Notice of Removal on October 1, 2021.

14. Accordingly, removal is timely.

## III. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. § 1332(a)

15. This Court has subject matter jurisdiction over all cases where the amount in controversy exceeds $75,000 and the case is between "citizens of different States." 28 U.S.C. § 1332(a). As explained below, both of those requirements are satisfied here.

**A. The Amount in Controversy Exceeds $75,000.**

16. The amount in controversy in this matter exceeds the jurisdictional threshold of $75,000.[2]

17. First, Zimmie claims that Warner breached a purported oral or implied agreement to provide for her and seeks damages based on a division of certain of his assets. (*E.g.*, Ex. A, Complaint, ¶¶ 8, 26, Prayer for Relief.) Zimmie affirmatively alleges that Warner's various assets are very valuable, including "substantial personal, business and real property holdings" (*id.* ¶ 19), a "billion-dollar" company (*id.* ¶ 3), and a piece of real property worth more than $400 million (*id.* ¶ 6). *See also id.* ¶¶ 13, 15 (alleging that Zimmie "enjoyed an elaborate standard of living" and that Warner covered significant living and other personal expenses for Zimmie). The Complaint makes other allegations suggesting Zimmmie seeks damages far in excess of the jurisdictional threshold, including, but not limited to, referencing a contract paying $200,000 per year. (See Ex. A, ¶ 21; see also generally, ¶¶ 3-21.) Although Zimmie does not specify a single dollar amount of damages that she is seeking, these allegations are more than sufficient to satisfy the jurisdictional threshold. *See Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1248 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.").

---

[2] In alleging the amount in controversy for purposes of removal, Warner does not concede in any way that the allegations in the Complaint in the State Court Action are accurate, that Zimmie is entitled to any amount alleged in the Complaint, that Zimmie has asserted claims upon which relief can be granted, or that recovery of any of the amounts sought is authorized or appropriate.

18. Second, Zimmie seeks as further relief a judgment ordering that she owns an "undivided one half interest in" a property that she claims Warner owns located at 1000 Channel Drive, Santa Barbara, California ("Channel Drive Property"). (Ex. A, Complaint, at Prayer for Relief.)

19. The amount in controversy in an action to quiet title is the value of the realty directly affected. *Ortiz v. Ocwen Loan Servicing, LLC*, 2009 WL 10673180, at *2 (C.D. Cal. May 7, 2009) (holding that in a quiet title action, the amount in controversy is calculated based on the value of the property at issue and collecting cases to support that proposition).

20. It is undisputed that the Channel Drive Property is worth more than $1,000,000. *See* Ex. D, Hwang Declaration, ¶ 19 (stating that the assessed value of the property "is considerably in excess of $1,000,000"); *see also* Ex. A, Complaint, ¶ 6 (alleging that the Channel Drive Property is valued at more than $400 million).

21. Third, prior to filing suit in this matter, Zimmie demanded that Warner pay an eight-figure amount to settle her purported claims against Warner. That demand reflects Zimmie's own assessment that the value of her claims exceeds the jurisdictional minimum. Under the law of this circuit, such a demand is relevant evidence that supports a finding that the amount in controversy requirement is satisfied. *Ives v. Allstate Ins. Co.*, 504 F. Supp. 3d 1095, 1098 (C.D. Cal. 2020).

22. Accordingly, the amount in controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of the Complaint filed in the State Court Action as well as the declarations attached hereto that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," as required under 28 U.S.C. § 1332(a).

**B.  There Is Complete Diversity of Citizenship.**

23. Because Zimmie and Warner are citizens of different states, there is complete diversity of citizenship under 28 U.S.C. § 1332(a)(1).

24. The diversity requirement turns on the citizenship of the parties. *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("But the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency."); *see also Atias v. Platinum HR Mgmt., LLC*, 2014 WL 3536557, at *2 (C.D. Cal. July 16, 2014). For diversity purposes, a person is not necessarily a citizen of the state in which he is residing. *Kanter*, 265 F.3d at 857; *Atias* 2014 WL 3536557, at *3 ("A person's residency does not determine citizenship for purposes of diversity jurisdiction."). Instead, an individual's citizenship is determined by his domicile, which is his "permanent home where, [he] resides with the intention to remain or to which [he] intends to return." *Kanter*, 265 F.3d at 857; *see also Atias* 2014 WL 3536557, at *2-3.

25. Although a person may have more than one residence, he can only have one domicile. *Colley v. McCullar*, 2016 WL 901679, at *2 (E.D. Wash. Mar. 9, 2016) ("It has long been recognized that a person's residence is not necessarily his domicile; whereas an individual may have multiple residences, he or she has only one domicile."). "A domicile once acquired is presumed to continue until it is shown to have been changed." *Shayn v. Faussett*, 2018 WL 3577235, at *2 (D. Nev. July 25, 2018) (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874).) There is "a presumption in favor of an established domicile as against a newly acquired one." *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). A person's old domicile is not lost until a new one is acquired. *Id.* at 750; *Little v. Grant County Hosp. Dist. #1*, 2020 WL 1433526, at *2 (E.D. Wash. Mar. 23, 2020).

26. An individual's domicile is determined by physical presence in a place combined with an intent to remain there. *Kanter*, 265 F.3d at 857; *Lew*, 797 F.2d at 752. The domicile of a person "is the place where that individual has a true, fixed home and principal establishment, and to which, whenever he is absent from the jurisdiction, he or she has the intention of returning." 13E Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 3612 (3d ed.). The determination of an individual's domicile involves consideration of a number of factors including: location of personal

and real property, location of brokerage and bank accounts, current residence, place of employment or business, driver's license and automobile registration, membership in unions and other organizations, and payment of taxes. *Lew*, 797 F.2d at 750. No single factor is controlling; rather, the nature and duration of the factors must be examined. *Karma Family LLC v. Brellaba LLC*, 2021 WL 886252, at *3 (C.D. Cal. Jan. 27, 2021).

27. In determining the citizenship of parties, "jurisdictional *facts*, not fiction, . . . are dispositive." *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) (holding that allegations would "give way" to fact if "Strotek had sued John Doe, alleging that he was a citizen of Nevada but it turned out that his permanent residence is in the District of Columbia"). The court thus does not limit its inquiry to the complaint. *Jauran v. K-Mart Corp.,* 2006 WL 1321018, at *1 (E.D. Cal. May 15, 2006). Instead, the court may look beyond the complaint and examine the evidence presented in order to determine diversity of the parties. *Lew*, 797 F.2d at 750-51; *Nesbitt v. Progressive Nw. Ins. Co.*, 2012 WL 13024804, at *1 (W.D. Wash. May 25, 2012).

1. Warner is a Citizen of Illinois.

28. As the following facts demonstrate, Warner is a citizen of Illinois.

29. Warner was born and raised in Illinois. (Ex. C, Declaration of H. Ty Warner ("Warner Declaration"), ¶ 3.)

30. Warner has lived and worked in Illinois almost his entire life. (Ex. C, Warner Declaration, ¶ 4; Ex. D, Hwang Declaration, ¶¶ 8, 9.)

31. Warner's home is located in Oak Brook, Illinois. (Ex. C, Warner Declaration, ¶ 5; Ex. D, Hwang Declaration, ¶¶ 9, 10.) Warner has lived at his home since 1990. (Ex. C, Warner Declaration, ¶ 5.)

32. Warner's primary employment and professional activities are on behalf of two companies whose principal places of business are located in Westmont, Illinois, and Warner's primary business office is located in that building in Westmont. (Ex. C, Warner Declaration, ¶¶ 6-10; Ex. D, Hwang Declaration, ¶¶ 12-14.)

33. For several decades, Warner has filed and paid state income tax and state or local property taxes in Illinois. (Ex. C, Warner Declaration, ¶¶ 11-12.)

34. Warner has held a valid Illinois driver's license since 1960, and his primary vehicle (a Jeep) is registered in Illinois and maintained at his home in Oak Brook, Illinois. (Ex. C, Warner Declaration, ¶¶ 13, 15; *see also* Ex. D, Hwang Declaration, ¶ 16.)

35. Warner has listed an Illinois address in each passport application that he has filed. (Ex. C, Warner Declaration, ¶ 14.)

36. Warner's personal bills are sent to his office in Westmont, Illinois. (Ex. C, Warner Declaration, ¶ 16; Ex. D, *see also* Hwang Declaration, ¶ 11.)

37. Warner's bank accounts and investment accounts are located in Illinois and to the best of his knowledge, his office in Westmont, Illinois is listed as the address of record for each of these accounts. (Ex. C, Warner Declaration, ¶ 17.)

38. Warner's primary attorney, his investment advisor, and doctors are all located in Illinois. (Ex. C, Warner Declaration, ¶ 18).

39. Warner has substantial community ties to Westmont, Illinois, where he works and Ty Inc. and TWHR are based. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) For example, Warner contributed all of the funds necessary to build a 36-acre community park (the "Ty Warner Park"), which is named after him, in Westmont. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) The Ty Warner Park is an important part of the community and hosts annual 4th of July fireworks, as well as a number of festivals throughout the year. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) The Ty Warner Park includes a picnic area with grills, a gazebo, a playground, concessions, a spray park, tennis courts, baseball fields, soccer fields, a sand volleyball court, disc golf, a walking path, a sled hill, fishing, and a zip line for kids. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) The Ty Warner Park was recently expanded with the addition of FMC Natatorium at Ty Warner Park built on land that Warner donated. (Ex. C, Warner

Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) Warner was personally and extensively involved with the design and development of the park because he felt a strong connection to the Westmont community, where he has had his office for many years. (Ex. C, Warner Declaration, ¶ 19.)

40. Also, through Ty Inc. and TWHR, Warner has directed contributions to a number of charities that are based and/or primarily provide services in Illinois. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.) These charities include: Advocate Good Samaritan Hospital, Another Chance Church, Casa of Will County, Cradles to Crayons, the Illinois State Police Heritage Foundation, Toys for Hospitalized Children, and Village of Lemont Police Department. (Ex. C, Warner Declaration, ¶ 19; Ex. D, Hwang Declaration, ¶ 20.)

41. Warner has been involved in a variety of litigation matters over the years. (Ex. C, Warner Declaration, ¶ 20.) In connection with those matters, Warner has consistently identified himself as an Illinois citizen, including in depositions, discovery responses, affidavits and pleadings, such as the Illinois Federal Action. (*Id.*) In two unrelated lawsuits, courts in California have found that they lacked jurisdiction over Warner. (Ex. C, Warner Declaration, ¶ 33; *see also Kreowski v. H. Ty Warner*, Case No. CV 990875 (Cal. Super. Ct. Apr. 5, 2000); *Amakua Dev., LLC v. H. Ty Warner*, Case No. 04-cv-08780-SJO-RNB (C.D. Cal. May 9, 2005).)

42. Warner does not live in and does not have any substantial ties to California in his individual capacity. (Ex. C, Warner Declaration, ¶¶ 21, 24, 25; *see also* Ex. D, Hwang Declaration, ¶¶ 15, 25.)

43. Contrary to Zimmie's allegations, Warner individually does not own any property in California, including the property located at 1000 Channel Drive in Santa Barbara. (Ex. C, Warner Declaration, ¶ 27; Ex. D, Hwang Declaration, ¶ 17.) The property referenced in Zimmie's Complaint is owned by a Delaware LLC. (Ex. C, Warner Declaration, ¶ 27; Ex. D, Hwang Declaration, ¶ 17.)

44. Although Warner was temporarily at the Channel Drive Property at the time the State Court Action was filed, Warner intends to return to his permanent home in Illinois. (Ex. C, Warner Declaration, ¶ 34.) He does not intend to remain in California indefinitely or permanently and has no intention to change his residency or citizenship to California. (*Id.*)

45. Warner has spent the vast majority of his time in Illinois over the years and has spent time in California only on a limited basis. (Ex. C, Warner Declaration, ¶¶ 4, 24; Ex. D, Hwang Declaration, ¶¶ 10, 18, 25.) For instance, between 2015 and 2019, Warner spent most of his time in Illinois and spent an average of only approximately 30 days in California. (Ex. C, Warner Declaration, ¶ 24.)

46. During 2019, Warner spent most of his time Illinois. (Ex. C, Warner Declaration, ¶ 22; Ex. D, Hwang Declaration, ¶ 21). In February 2020, Warner traveled from Illinois to California. (Ex. C, Warner Declaration, ¶ 23; Ex. D, Hwang Declaration, ¶ 22). Shortly thereafter, the Covid-19 pandemic hit the United States. (Ex. C, Warner Declaration, ¶ 23; Ex. D, Hwang Declaration at ¶ 22). As a result, Warner, who is 77, has been uncomfortable traveling. (Ex. C, Warner Declaration, ¶ 23; *see also* Ex. D, Hwang Declaration, ¶ 24). This is highly unusual for Mr. Warner as he traveled domestically and internationally for business frequently in the years prior to the pandemic. (Ex. C, Warner Declaration, ¶¶ 23-24; Ex. D, Hwang Declaration, ¶¶ 24-25). However, he has not traveled either within the United States or internationally since February 2020. (Ex. C, Warner Declaration, ¶ 23; Ex. D, Hwang Declaration, ¶ 24).

47. It is highly unusual for Warner to spend significant time in California during a year. (Ex. C, Warner Declaration, ¶ 24; Ex. D, Hwang Declaration, ¶ 25).

48. The departure from Warner's normal practice during Covid-19 has been solely a consequence of the pandemic. (Ex. C, Warner Declaration, ¶ 24; Ex. D, Hwang Declaration, ¶¶ 22-25). Warner has no intent to remain in California indefinitely, nor

does he have any intent to change his domicile to California. (Ex. C, Warner Declaration, ¶ 34).

49. Consistent with this intent, Warner has no significant personal ties to California. (Ex. C, Warner Declaration, ¶ 25.) He does not: hold a California driver's license, have a bank or investment account that is located in California, have personal bills sent to him in California, or have a personal business office in California. (Ex. C, Warner Declaration, ¶¶ 26-32; Ex. D, Hwang Declaration, ¶¶ 15, 17-18).

### 2. Zimmie is a Citizen of Ohio.

50. Contrary to Zimmie's allegations in her Complaint, Ms. Zimmie is a citizen of Ohio and has been for many years. (Ex. C, Warner Declaration, ¶ 35.) Ms. Zimmie has an Ohio driver's license; owns a condo in Ohio which has been her primary residence for many years; pays Ohio taxes; has insurance in Ohio, and owns a car registered in Ohio. (Ex. C, Warner Declaration, ¶ 36).

51. Even if Zimmie were a citizen of California as she alleges (Ex. A, Complaint, ¶ 1), Warner and Zimmie still would be diverse because Warner is a citizen of Illinois.

52. Because Warner is a citizen of Illinois and Zimmie is a citizen of a different state, there is complete diversity between the parties and the Court therefore has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332(a)(1).

## IV. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. § 1331 AND 28 U.S.C. § 1367

53. In addition to having diversity jurisdiction over this action, this Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

54. Under Section 1331, the Court has original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

55. Count Seven of the State Court Action asserts a RICO claim pursuant to 18 U.S.C. § 1964, which is a federal law.

56. Accordingly, this Court has subject matter jurisdiction over the RICO claim asserted in Count Seven. *Bisno Dev. Enter., LLC v. Levine,* 2014 WL 12628675, at *1 (C.D. Cal. Jan. 16, 2014); *Brewer v. Wells Fargo Bank, N.A.,* 2013 WL 12110503, at *4 (C.D. Cal. July 16, 2013).

57. In addition to the RICO claim, Zimmie has also asserted six state law claims in Counts One through Six, including claims for: (1) breach of express contract; (2) breach of implied contract; (3) quiet title; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) conversion.

58. Under 28 U.S.C. § 1367, in any civil action in which this Court has original jurisdiction, the Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

59. Claims are part of the "same case or controversy" within the meaning of Section 1367 when they derive from a common nucleus of operative facts. *Ryan v. Salisbury*, 380 F. Supp. 3d 1031, 1047 (D. Haw. 2019): *Caro v. United Nat. Foods W., Inc*, 2016 WL 10999325, at *1 (C.D. Cal. July 6, 2016). In assessing whether the case or controversy requirement is satisfied, courts consider "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Landy v. Pettigrew Crewing, Inc*., 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019). Even a "loose factual connection between the claims is generally sufficient." *Spies v. El Dorado Cty.*, 2016 WL 7212788, at *2 (E.D. Cal. Dec. 12, 2016).

60. Under the standard articulated above, the Court has supplemental jurisdiction over the state law claims included in Zimmie's Complaint because they form part of the same case or controversy as Zimmie's RICO claim, which is within the Court's original jurisdiction under 28 U.S.C. § 1331.

61. Zimmie's RICO claim incorporates all of the paragraphs that are included in the state law claims set forth in Counts One to Six. (Ex. A, Complaint, ¶ 82.) As an

initial matter, this fact demonstrates that Zimmie is relying on the same facts to state both her state law claims and her RICO claim. See *Lew v. U.S. Bank Nat. Ass'n,* 2011 WL 5368847, at *3 (N.D. Cal. Nov. 7, 2011) (holding that the state law claims were closely related to the federal claim where the plaintiff's factual allegations, according to the complaint, applied "to all causes of actions," and were incorporated by reference into each claim); *Yanez v. Cty. of Los Angeles*, 2017 WL 2561090, at *4 (C.D. Cal. June 12, 2017) ("Because both the second and third claim are based on many, if not all of the same factual allegations as Plaintiff's federal claim, the Court has supplemental jurisdiction over them.").

62. Taking the analysis further, an examination of the allegations which form the basis for Zimmie's RICO claim and her state law claims demonstrates that these claims all arise from a common nucleus of operative facts.

63. Zimmie bases her RICO claim on the allegations that: (a) Zimmie and Warner had a long-term personal relationship; (b) Warner was abusive and controlling during the course of their relationship, (c) Warner made promises to care for her and provide for her; and that (d) Warner exploited his relationship with Zimmie to engage in a fraudulent scheme to steal her identity in order to create a company in Zimmie's name which would provide economic benefits to Warner.

64. Zimmie's state law claims are based on and arise from many of the same key allegations. Like the RICO claim, Zimmie's state law claims are also predicated on the allegations that (a) Zimmie and Warner had a long-term personal relationship; (b) Warner was abusive and controlling during the course of their relationship, (c) Warner made promises to care for her and provide for her, and (d) Warner exploited his relationship with Zimmie for his own benefit. (*E.g.*, Ex. A, Complaint, ¶¶ 8, 20-21, 26, 2938, 44-49, 56-62, 68, 79.)

65. Accordingly, the state law and federal RICO claims arise from a common nucleus of operative allegations. Zimmie's allegations are part of the same case or controversy, and the claims form a convenient trial unit. *Bahrampour v. Lampert*, 356

F.3d 969, 978 (9th Cir. 2004). The witnesses related to all of the claims will overlap as will much of the evidence. Accordingly, it is appropriate for the Court to exercise its supplemental jurisdiction over Zimmie's state law claims.

## V. THE PROCEDURAL REQUIREMENTS FOR REMOVAL PURSUANT TO 28 U.S.C. § 1446(a) ARE SATISFIED

### A. Venue

66. This action is properly removed to this Court because the Santa Barbara Superior Court is located within the Central District of California. *See* 28 U.S.C. §§ 84(c), 1446(a).

### B. The State Court File

67. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders, served on or by Warner in the State Court Action are attached hereto as Exhibits A and B to this Notice.

68. To Warner's knowledge, no other documents, or pleadings were filed in the State Court Action.

### C. Written Notice of Removal

69. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Zimmie. A copy of this Notice of Removal also is being filed in the State Court Action.

## VI. CONCLUSION

70. Warner reserves his right to amend or supplement this Notice of Removal.

71. If any question arises as to the propriety of the removal of this action, Warner requests the opportunity to present a brief and requests oral argument in support of removal.

WHEREFORE, Defendant H. Ty Warner respectfully removes this action from the Superior Court of the State of California, County of Santa Barbara to this Court.

Dated: October 1, 2021

Mullen & Henzell L.L.P.

By: _____
Jared M. Katz
Attorneys for Defendant H. Ty Warner

25660-0001
4826-6003-4557

---

16
NOTICE OF REMOVAL